UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| KENT NOLEN, ) | Bankruptcy No. 10-23190 |
|      Debtor. ) | |
| _____ ) | |
| ) | |
| COMMUNITY SCHOOLS CREDIT ) | |
| UNION, successor by merger to Muskegon ) | |
| Teachers Credit Union, ) | |
|      Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 10-1853 |
| ) | |
| KENT NOLEN, ) | |
|      Defendant. ) | |
| _____ ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL

Kent Nolen, defendant in this Adversary proceeding, filed for relief under Chapter 7 of the Bankruptcy Code on May 21, 2010. On September 22, 2010, Community Schools Credit Union ("Community") filed this Adversary Complaint seeking a declaration that the debt Nolen owes it is excepted from discharge because the debt was a result of willful or malicious injury to Community's property. *See* 11 U.S.C. § 523(a)(6). Trial was held on February 15, 2011. Following trial, the following Findings of Fact and Conclusions of Law are made and will be entered.

### FINDINGS OF FACT

1. Nolen, the debtor in this Chapter 7 bankruptcy case and defendant in this Adversary proceeding, has a Ph.D. and has worked as a school administrator.

1

2. On March 14, 2005, Nolen and Muskegon Teachers Credit Union entered into a loan agreement in the amount of $35,000.00 to finance Nolen's purchase of a 1999 Porsche Carrera model 911 Vehicle Identification Number WPOAA2998XS625369.

3. The loan agreement signed by Nolen was secured by a lien on the Porsche.

4. Pursuant to terms of the loan agreement, Nolen was required to and did have the Credit Union's lien placed upon the title to the Porsche.

5. At that time, Nolen lived in Michigan and received a Michigan Certificate of Title for the Porsche.

6. "Muskegon Teachers CU" was listed as the First Secured Party on Nolen's Michigan Certificate of Title.

7. Community later became and is now successor by merger to the interests of the Credit Union, including lien interests in the Porsche.

8. Nolen was never authorized to release Community's lien upon to the Porsche.

9. In late 2005, Nolen moved from Michigan to Illinois.

10. After he moved, Nolen acquired an Illinois driver's license and registered the Porsche in Illinois.

11. On December 10, 2005, Defendant, without authority or authorization from the Credit Union or Community, placed his signature on the Michigan Certificate of Title in a section entitled "Release of First Lien," thereby forging a release of the lien.

12. When Nolen filled out an Illinois Title Application for the Posche, he did not list the Credit Union or Community as a lienholder. Consequently, the Illinois Certificate of Title issued without showing the lien owned by Community on the Porsche.

2

13. For twenty-four months thereafter, Nolen continued to make payments to Community until March 13, 2007, when the balance remaining on the loan was $23,868.37.

14. In 2007, the Porsche was damaged and required repairs costing more than $6,000.

15. Nolen borrowed $6,000 from Advance Loans, Inc., ("Advance") to pay for part of the repairs.

16. To secured Advance's loan, Nolen granted Advance a lien on the Porsche and thereby allowed Advance to record its lien interest on his Illinois Certificate of Title. Since no other lien was shown on that title, Advance thereby obtained an apparent first lien on the auto.

17. On December 14, 2007, Nolen filed for bankruptcy under Chapter 13 of the Bankruptcy Code.

18. In the 2007 bankruptcy, Nolen scheduled the Porsche as his property on Schedule B and valued it at $28,100.

19. In the 2007 bankruptcy, Nolen scheduled Advance as a creditor with a $12,633 claim that was entirely secured by a first-priority lien on the Porsche.

20. In the 2007 bankruptcy, Nolen scheduled "Muskegon Teachers Credit Union" as a creditor with a $22,500 claim and representing that its claim was partially secured by a second-priority lien on the Porsche, leaving $7,033 of its claim unsecured.

21. The 2007 bankruptcy case was eventually dismissed. This second bankruptcy case followed, and in it Nolen scheduled Advance with a $12,600 unsecured claim and Community with a $22,500 unsecured claim.

## CONCLUSIONS OF LAW

An individual Chapter 7 debtor ordinarily receives a discharge of debts under 11 U.S.C. § 727. However, certain debts of individual debtors are not discharged. *See id.* § 523. A party seeking a declaration that a debt is not discharged bears the burden of proof by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–91 (1991). Because of the strong policy of the Bankruptcy Code to provide a debtor with a fresh start, exceptions to discharge are strictly construed in favor of the debtor and against the objecting creditor. *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

One type of debt that is excepted from discharge is debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Plaintiff Community asserts that provision here to bar dischargeability of debt due to it.

"Willful" means a "deliberate and intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Debts arising from recklessly or negligently inflicted injuries are not "willful." *Id.* at 64. "In other words, the debtor must have intended the tortious consequences of his act." *In re Burke*, 398 B.R. 608, 626 (Bankr. N.D. Ill. 2008). Intent can be demonstrated by either "a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts." *Id.* "Because a person will rarely admit to acting in a willful and malicious manner, those requirements must be inferred from the circumstances surrounding the injury." *Id.*

A "malicious" act is one taken "in conscious disregard of one's duties or without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994). An objecting creditor must

4

show "(1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor, and (4) is done without just cause and excuse." *Burke*, 398 B.R. at 626.

In this case, Nolen injured Community in 2007 by using his Illinois Certificate of Title that did not identify Community or the Credit Union as a lienholder (fraudulently obtained on December 10, 2005, by his forging a lien release signature on behalf of the Credit Union) to allow Advance to obtain a perfected first lien on the vehicle in late 2007. Because lien rights in automobiles are perfected only through certificates of title, *see* 625 Ill. Comp. Stat. 5/3-202, this effectively prevented the Credit Union (now Community) from realizing on the value of the Porsche through repossession and sale when Nolen stopped making payments on the original debt in March of 2007.

Nolen placed his signature in the "release of lien" section of his Michigan Certificate of Title and received an Illinois Certificate of Title that did not list Community as a lienholder. Although he claimed in testimony at trial that this was a mistake, he made no subsequent efforts to correct the Illinois Certificate of Title to show the interest of Community. Eventually, he used his clean Illinois title to secure a new loan from Advance and gave the new lender a lien on the clean title in return for its loan to him of $6,000. These circumstances demonstrate that Nolen knew that his new loan from Advance would harm Community's lien rights so that he might obtain the new loan. As a result, he benefitted from the new loan. This was a wrongful and deliberate act that injured Community and for which Nolen, an educated man, has no excuse.

The harm thereby done to the Community lien rights was obvious and therefore showed ". . . subjective intent to injure the creditor or . . . debtor's subjective knowledge that injury is

substantially certain to result from his acts." *Burke*, 398 B.R. at 626. Therefore, the injury was willful.

The act of granting a lien to Advance was taken in conscious disregard of Defendant's duties to the original lienor-creditor "without just cause or excuse," and was therefore malicious. *Thirtyacre*, 36 F.3d at 700.

Community did not present evidence of the Porsche's value at the time of the injury. However, Nolen admitted in his earlier 2007 bankruptcy, which he filed shortly after granting Advance its lien, that the Porsche was worth $28,100, an amount in excess of the unpaid balance on Community's loan. That value of the vehicle is what Community lost when it lost its lien rights, up to the amount of debt owed to it.

It is useful to discuss a recent opinion, *In re Porayko*, 443 B.R. 419 (Bankr. N.D. Ill. 2010), to contrast the situation here with a case where § 523(a)(6) did not apply. Before that bankruptcy case was filed, a creditor had obtained a judgment against the debtor. The creditor had also issued a citation to discover assets, which instructed the debtor, who was acting *pro se* in that matter, not to dispose of non-exempt property. The debtor did nevertheless use non-exempt cash to pay for various expenses, including maintenance on various investment properties. Although that violated the citation, the debtor had thought that he was acting within his rights. Once his bankruptcy was filed, the creditor objected to dischargeability of its debt under § 523(a)(6), arguing that the debtor had willfully and maliciously injured it. It was found and held there that the debtor did not act willfully or maliciously. Whether or not affected property was exempt was a potentially tricky legal issue that was not clear to the debtor, a lay person, so the creditor did not show that the debtor had actual intent to injure the creditor.

Here, Nolen signed his name to the Michigan Certificate of Title in a section unambiguously labeled "Release of First Lien." He then obtained an Illinois Certificate of Title that did not list the Credit Union or Community as a lienholder on the Porsche which he later used to obtain a new loan. Nolen understood the results of these actions and had no reasonable ground to believe that he was acting in accord with his legal rights and obligations.

## CONCLUSION

For reasons discussed above, Nolen owes the entire debt to Community, and that debt will be declared nondischargeable by separate Judgment order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

APR 11 2011

Dated this \_\_\_ day of April, 2011.